UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 91-cr-06093-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMES HARRISON CAMPBELL,

    Defendant.
_____/

### ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant James Harrison Campbell's ("Defendant" or "Campbell") Motion for Compassionate Release or Modification of an Imposed Term of Imprisonment for Extraordinary and Compelling Reasons pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. [179] ("Motion"). Plaintiff the United States of America ("Government") filed a response in opposition, ECF No. [181] ("Response"), to which Defendant filed a reply, ECF No. [182] ("Reply"). The Court has carefully considered the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

    **I.**    **BACKGROUND**

    **A. Campbell's conviction and sentence**

The Court assumes the parties' familiarity with the factual and procedural background in this case, based on the Court's Order on Campbell's previous motion for compassionate release. *See* ECF No. [178]. The Defendant was found guilty of attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841 (Count One); possession of firearms with obliterated serial

numbers, in violation of 26 U.S.C. § 5861(h) (Count Two); possession of four machine guns with obliterated serial numbers, in violation of 18 U.S.C. § 922(o) (Count Three); and using and carrying up to 4 machine guns during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Four). ECF No. [73]. The Court sentenced the Defendant to 152 months of imprisonment as to Count One, 120 months of imprisonment as to each of Counts Two and Three, to run concurrently with each other and with the sentence imposed as to Count One, and 360 months of imprisonment as to Count Four, to run consecutive to all other sentences, for a total of 512 months. ECF No. [91]. The Court also imposed concurrent supervised release sentences of 8 years as to Count One, 3 years as to Counts Two and Three, and 5 years as to Count Four. *Id.*

The Defendant has remained in continuous custody since his arrest on April 25, 1991. As a result, he has served approximately 356 months (over 29 years) of the initial 512 months portion of his sentence. This equates to approximately 69.5 percent of the total sentence. The Defendant is 74 years old and is scheduled to be released from custody on May 25, 2025.[1] He is currently incarcerated at USP Allenwood in Allenwood, Pennsylvania.

### B. Previous and current Motions

Campbell previously filed a motion for compassionate release, ECF No. [167] ("First Motion"), on the basis that he is age 65 or older, suffering from chronic or serious medical conditions relating to the aging process; experiencing deteriorating mental or physical health that substantially diminishes his ability to function in a correctional facility; conventional treatment promises no substantial improvement to his mental or physical condition and he has served at least 50% of his sentence. Following full briefing and an evidentiary hearing, the Court ultimately

---

[1] The Court previously granted Defendant's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(2), ECF No. [159], in light of a retroactively applicable amendment to the Sentencing Guidelines and reduced the Defendant's sentence as to Count One from 152 months of imprisonment to 120 months of imprisonment. ECF Nos. [169], [172].

denied the First Motion because the evidence did not support the conclusion that the Defendant's chronic medical conditions limit his ability to function in the correctional facility where he is housed, or that his medical issues are preventing him from being able to provide self-care.

In the instant Motion, Campbell seeks compassionate release based upon the current COVID-19 pandemic, arguing that his age, likely immunocompromised state, and multiple physical conditions render him extremely vulnerable to the coronavirus, and therefore unable to provide self-care within the Bureau of Prisons ("BOP"). In addition, Campbell asserts that if he were to contract the virus, there is a strong likelihood that he would not survive. The Government opposes the Motion, arguing that Defendant has not established "extraordinary and compelling" circumstances to justify a sentence reduction, as his medical conditions do not fall within one of the categories specified in USSG § 1B1.13, cmt. n.1, and the section 3553(a) factors weigh strongly against his release.

### C.  Ongoing COVID-19 pandemic

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 20,346,372 confirmed cases and 349,246 reported deaths as of January 3, 2021.[2] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal

---

[2] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Jan. 3, 2021).

institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.   LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir.

2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction . . . .
> > . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction, the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and the reduction is consistent with this policy statement." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018).

Congress has not defined what constitutes "extraordinary and compelling" other than that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). The statute directs the Sentencing Commission to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. *Id.* Before the passage of the First Step Act, the Sentencing Commission concluded "extraordinary and compelling reasons" were limited to four scenarios:

First, the defendant's medical condition is such that he suffers from a "terminal illness" or the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, cmt. n.1(A). Second, "[t]he defendant (i) is at least [sixty-five] years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less." § 1B1.13, cmt. n.1(B). Third, the defendant's family circumstances include either "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." § 1B1.13, cmt. n.1(C). In addition, the Sentencing Commission provided a catch-all provision that allows the BOP Director to determine

that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13, cmt. n.1(D). Extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing." § 1B1.13 cmt. n.2. And although "rehabilitation . . . is not, *by itself*, an extraordinary and compelling reason," the Commission implies that rehabilitation may be considered with other factors. *See* § 1B1.13 cmt. n.3 (emphasis added).

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted"). Applying these legal standards, the Court now considers the Defendant's Motion.

### III. DISCUSSION

#### A. The Court is not bound by § 1B1.13

At the outset, the Court notes that the Government raises a threshold issue with respect to the applicable legal framework, and whether the Court is bound by the Sentencing Commission policy statement. The Government argues that while the First Step Act allowed defendants to file motions under § 3582(c), it did not change the requirement that any reduction in sentence be consistent with applicable policy statements. In response, Campbell argues that § 1B1.13 is not binding.

As has been recognized by other courts, the Sentencing Commission has not implemented a policy statement following the First Step Act. *See United States v. Brown*, 411 F. Supp. 3d 446, 449 n.1 (S.D. Iowa 2019) (collecting cases)). Rather, the policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons." § 1B1.13, cmt. n.4. As noted by one district judge in *Brown,* "[T]his leaves district courts in a conundrum. On the one hand, Congress unequivocally said it wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with *applicable* policy statements" from the Sentencing Commission. § 3582(c)(1)(A) (emphasis added). On the other hand, the Commission—unable to take any official action—has not made the policy statement for the old regime applicable to the new one." *Id.*

While the Eleventh Circuit has yet to address the issue, four Circuits have recognized that the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release, and that § 1B1.13 does not apply to cases in which a defendant files a motion for compassionate release. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir.

2020) ("[T]hough motions by the BOP still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *United States v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020) ("By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."); *United States v. Jones*, 980 F.3d 1098, 1108-09 (6th Cir. 2020) ("[T]he passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release."); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020) ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review.").

The Court agrees that it is not bound Sentencing Guidelines policy statement, though the factors set forth in the policy statement provide a useful framework for the Court's analysis.

### B. Exhaustion of Administrative Remedies

Campbell has satisfied the first part of the Court's inquiry, which the Government does not dispute. In relevant part, Campbell submitted a request for compassionate release to the Warden of his facility on April 13, 2020, ECF No. [179-1], which was denied on April 30, 2020 because his medical conditions did not meet applicable BOP Program Statement 5050.50 criteria. ECF No. [179-2]. In addition, Campbell filed several appeals of the Warden's denial. *See* ECF Nos. [179-3], [179-4]. As such, Defendant has adequately exhausted his administrative remedies with the BOP.

### C. Extraordinary and Compelling Reasons

Campbell argues that extraordinary and compelling reasons exist in his case based upon a combination of his age, health conditions, and his resulting vulnerability to COVID-19. In

9

response, the Government argues that the only change in Campbell's circumstances since the First Motion is the existence of the COVID-19 pandemic, and that the generalized threat of COVID-19 is insufficient to warrant compassionate release. In addition, the Government argues that none of Campbell's identified medical conditions are identified by the CDC as increasing the risks associated with COVID-19, and that his assertion that he is likely immunocompromised is speculative because he has provided no evidence that he in fact is immunocompromised. Lastly, the Government argues that there is a lack of data and certainty regarding Campbell's potentially increased vulnerability to COVID-19 based on an immunocompromised state. Upon review, the Court finds that Campbell sufficiently demonstrates that extraordinary and compelling reasons exist in his case.

CDC guidance indicates that older adults are at greater risk of requiring hospitalization or dying if diagnosed with COVID-19, and that the risk for severe illness increases with age.[3] Indeed, 8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years old and older.[4] The rate of hospitalization is five times higher, and the rate of death is 90 times higher, for individuals aged 65 to 74 than for individuals aged 18 to 29.[5] CDC guidance indicates further that adults of any age with the following health conditions are at increased risk of severe illness due to COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, Down Syndrome, heart conditions, such as heart failure, coronary artery disease, and cardiomyopathies, immunocompromised from solid organ transplant, obesity, severe obesity, pregnancy, sickle cell

---

[3] *Older Adults*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Dec. 13, 2020).

[4] *Id*.

[5] *Id*.

disease, smoking, and type 2 diabetes.[6] Adults of any age with the following conditions might be at an increased risk for severe illness: asthma (moderate-to-severe), cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immunocompromised state from blood or bone marrow transplant, immune deficiencies of HIV, use of corticosteroids, or use of other immune weakening medicines, neurologic conditions such as dementia, liver disease, overweight, pulmonary fibrosis, thalassemia, and type 1 diabetes.[7]

Campbell is now 74 years old and does not enjoy good health. He was diagnosed with cancer twice. He has suffered from basal cell carcinoma requiring surgery, and in early 2013, he was diagnosed with squamous cell carcinoma with metastasis to the tonsil that spread to the head and neck. The spread of the cancer required a partial dissection of his neck and six to eight weeks of radiation and chemotherapy. As the Court previously found, Campbell's medical conditions are chronic. He has chronic lumbar degenerative disc disease and has undergone two spinal surgeries—including two separate spinal fusions. He suffers from osteoarthritis, muscle spasms and stiffness in his low back. He has chronic kidney disease, age-related cataracts, and hearing loss in one ear. He also suffers from a collapsed vocal cord following his neck dissection, causing difficulty swallowing and eating certain foods.

Although Campbell appears to be in remission and shows no signs of recurrence of cancer following a physical exam in April 2019, he contends that he is likely in an immunosuppressed physical state due to multiple rounds of chemotherapy and radiation he underwent in an effort to combat his bouts with cancer. In support of this claim, Campbell has submitted medical records

---

[6] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

[7] *Id.*

detailing his chemotherapy treatment dosage of the drug Cisplatin, as well as excerpts from the Merck Manual of Diagnosis and Therapy, which specify that use of Cisplatin and radiation cause immune system suppression. *See* ECF Nos. [179-5], [179-6].[8]

Moreover, although USP Allenwood is currently reporting no COVID-19 positive inmates, there are 15 positive staff members, and one reported inmate death.[9] Of the total inmate population of 550, BOP is reporting that 132 inmates have recovered from COVID-19. As such, 24 percent of the inmate population has already contracted the virus.[10]

As a result of this combination of factors, Campbell has satisfied his burden of demonstrating that extraordinary and compelling reasons exist in his case.[11]

### D. § 3553(a) factors

The applicable sentencing factors under § 3553(a) include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

---

[8] Although the Government contends that Campbell's assertion is speculative, the Government provides no evidence or argument that would negate the Merck Manual excerpts, or the fact that BOP denied his request for a blood test that he contends would demonstrate his immunosuppressed state.

[9] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus (accessed Jan. 4, 2021).

[10] *Id*.

[11] Because the Court determines that extraordinary and compelling circumstances exist based upon Campbell's health-related argument, the Court does not consider his defaulted claim regarding incarceration based on a non-offense.

> . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

To date, Campbell has served approximately 356 months or nearly 30 years of his sentence. As the Court noted in its previous Order, Campbell's efforts at rehabilitation have been extensive, and weigh in favor of compassionate release. Campbell has utilized his education, including a degree in business administration from Georgia State University, graduate study at the University of Tennessee and the Sophia University in Tokyo, Japan, to help other inmates. While incarcerated, Campbell has completed four novels. He has consistently volunteered to help others at the various facilities where he has been incarcerated. He served as the head librarian at USP Victorville and USP Lompoc. At USP Lompoc, he was the class coordinator for the Adult Continuing Education Program. As the class coordinator, his duties and responsibilities included ordering supplies, books, magazines, creating attendance rosters, processing applications, assisting in producing teaching materials, preparing classrooms and cleaning up after each class. Further, he drafted proposals for the staff and created new class offerings for inmates in French, creative writing, and small business. At USP Victorville, he worked closely with the associate warden to improve resources available to the inmates. Campbell was selected by the supervisor of education to redesign and restructure the library, which included obtaining 6,000 new books, logging them on the computer by title and author, and organizing them on the shelves. He also obtained and placed in circulation instructional and vocational videos. At USP Allenwood, Campbell tutors inmates attempting to improve their writing skills and assists inmates in GED preparation. He taught a GED class in Spanish at FCI Phoenix and participated in GED preparation for other inmates. At USP Allenwood, he helped an inmate navigate a small business class offered at the facility. As

such, Campbell has exhibited an exemplary rehabilitative record and has changed the lives of many inmates and their families. As the Court noted previously, in doing so, Campbell has undoubtedly changed his own outlook on life. The Court therefore finds that these rehabilitative efforts weigh heavily in favor of Defendant's release. *See United States v. Brown*, No. 14-cr-60161-BLOOM, 2020 WL 5116781 at *5 (S.D. Fla. Aug. 31, 2020) (granting motion for compassionate and noting the defendant had "participated in numerous rehabilitative programs and classes, worked toward obtaining his GED, received good work performance ratings from his supervisors at his job in the prison bakery[,] . . . [was] housed in a minimum-security facility and [had] maintained a perfect disciplinary record during his time in custody.").

Additionally, the Court considers these factors in the context of Defendant's medical conditions and the extraordinary and compelling circumstances in this case. "When the Court sentenced [the defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) (quoting *United States v. Rodriguez*, 03 Cr. 271-1, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)). Upon consideration of the entire record in this case, and in light of the sentence that Defendant has already served, the Court concludes that a sentence reduction would not be inconsistent with the goals of sentencing. *See United States v. Scott*, No. CR 1:02-00241-01, 2020 WL 4905749, at *3 (S.D. W. Va. Aug. 19, 2020). As such, the applicable § 3553(a) factors weigh in favor of granting Defendant's Motion.

### E.  Campbell poses no danger to the community

As to whether Defendant poses a danger to the safety of the community, section 3142(g) sets forth the relevant factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). "The factors listed in 3142(g) are largely duplicative of those in 3553(a)." *United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) (quoting *United States v. Salvagno*, No. 02-51, 2020 WL 3410601, at *7 (N.D.N.Y. Apr. 23, 2020)).

As the Court previously noted, while the offenses of attempting to possess with intent to distribute cocaine and possession of machineguns during and in relation to a drug trafficking crime are dangerous and serious crimes, much time has passed since they were committed by Defendant in 1991. Moreover, because of Campbell's advanced age, the likelihood of recidivism is low. He has accomplished an extraordinary degree of rehabilitation during the nearly 30 years he has been incarcerated.

In addition, Defendant has presented the Court with a concrete release plan. If released, Defendant plans to reside in Chattanooga, Tennessee, where his friend Martha Emery and her partner Stephen Harper will assist him in renting an apartment. Campbell plans to seek online employment, and his cousin Nancy Pierce intends to gift him a substantial sum of money to help him resume life outside of prison.

## IV. CONCLUSION

Accordingly, the Court determines that Defendant has sufficiently satisfied each of the compassionate release considerations. Therefore, the Motion, **ECF No. [179]**, is **GRANTED** as follows:

1. Defendant's term of imprisonment is reduced to **TIME SERVED** as of the date of this Order. The Defendant shall be placed on supervised release consistent with his previous Judgment and sentence.

2. Defendant's counsel shall work with the United States Probation Office to ensure that a plan of release is approved as soon as possible.

3. The Federal Bureau of Prisons is directed to release Defendant immediately after the United States Probation Office approves his release plan. Defendant is responsible for arranging his own transportation and, once released, must proceed directly to quarantine for fourteen (14) days.

4. Defendant must report via telephone to the U.S. Probation Office **within forty-eight (48) hours** of his release from BOP custody.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 5, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record